UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JUSTIN BOHN,
    Plaintiff,

v.     Case No. 3:19cv1144(MPS)

COMMISSIONER ROLLIN COOK, et al.,
    Defendants.

## INITIAL REVIEW ORDER

The plaintiff, Justin Bohn, is incarcerated at the Osborn Correctional Institution ("Osborn") in Somers, Connecticut. He has filed a civil rights complaint under 42 U.S.C. § 1983 against Captain Perez, Counselor Supervisor Long, Director of Classification Karl Lewis, Classification Officer Miaga, Deputy Warden Orteo Negron, and Parole Members Carleton Giles, Michelle Roman, Carmen Sierra, Nancy Turner, and Pamela Richards. For the reasons set forth below, the court will dismiss the complaint in part.

### I.     Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. Facts

On February 18, 2011, Naugatuck police officers arrested the plaintiff on charges of unlawful restraint in the first degree and sexual assault in the first degree. *See* Compl. at 3 ¶ 13. These charges arose from two incidents involving the same victim that occurred on the same day, February 11, 2011, in Naugatuck, Connecticut. *Id.* Prior to trial, the State of Connecticut dropped the sexual assault charge against the plaintiff. *Id.* The plaintiff then pled guilty to one count of unlawful restraint in the first degree and a judge sentenced him to three years of imprisonment, execution suspended, and three years of probation.[1] *Id.*

Naugatuck police officers also arrested the plaintiff on a charge of assault in the second degree arising from an incident that occurred on February 12, 2011 in Plainville, Connecticut. *Id.* The plaintiff pled guilty to the charge and a judge sentenced him to five years of imprisonment, execution suspended after three and one-half years, and followed by three years

---

[1] Information regarding the plaintiff's conviction for unlawful restraint in the first degree and the sentence imposed pursuant to that conviction may be found at: http://www.jud.ct.gov/jud2.htm under Criminal/Motor Vehicle Case Look-up, Convictions-- Search by Docket Number using Case Number AAN-CR11-0048203-0.

of probation.² *Id.* Department of Correction officials subsequently discharged the plaintiff from his term of imprisonment. *Id.* at 4 ¶ 14.

On January 31, 2017, Ansonia police officers arrested the plaintiff on charges of kidnapping in the second degree, assault in the second degree, and failure to appear. *Id.* On August 29, 2018, a judge sentenced the plaintiff to twelve years of imprisonment, execution suspended after six years, and followed by five years of probation.³ *Id.*

When the plaintiff arrived at MacDougall-Walker Correctional Institution, a counselor informed him that classification officials had assigned him a sex offender treatment needs score of 3 based on information in the police report regarding his arrest in February 2011 for sexual assault in the first degree and unlawful restraint in the first degree. *Id.* ¶ 15. The plaintiff did not receive a hearing in connection with the decision to assign him a sex offender treatment needs score of 3. *Id.* The plaintiff wrote to Captain Perez about his score and the fact that the score had been assigned to him without a hearing. *Id.* ¶ 17. Captain Perez did not respond to the plaintiff's request. *Id.*

On February 15, 2019, the plaintiff attended a Parole Board Jurisprudence Hearing. *Id.* ¶ 18. Parole Board Members Roman, Sierra, Richards, and Turner denied him release on parole based on information in the February 2011 police report regarding the circumstances that

---

² Information regarding the plaintiff's conviction for assault in the second degree and the sentence imposed pursuant to that conviction may be found at: http://www.jud.ct.gov/jud2.htm under Criminal/Motor Vehicle Case Look-up, Convictions--Search by Docket Number using Case Number AAN-CR11-0397428-0.

³ Information regarding the plaintiff's conviction for kidnapping in the second degree and the sentence imposed pursuant to that conviction may be found at: http://www.jud.ct.gov/jud2.htm under Criminal/Motor Vehicle Case Look-up, Convictions--Search by Docket Number using Case Number AAN-CR17-0155871-T.

resulted in his arrest on the charge of sexual assault in the first degree and his arrest and conviction on the charge of unlawful restraint in the first degree as well as the fact that the Department of Correction had labeled him a sex offender. *Id.* at 4-5 ¶ 18.

After the plaintiff's transfer to Osborn, he wrote to Counselor Long indicating that his sex offender treatment needs score was incorrect. *Id.* ¶ 21. Counselor Long did not schedule a classification hearing to address the plaintiff's score. *Id.* On February 26, 2019, the plaintiff filed a grievance. *Id.* ¶ 22. On March 25, 2019, a prison official denied the grievance. *Id.*

The plaintiff contends that a sex offender treatment needs score of 3 is assigned to an inmate who has a current conviction or pending charge for a sexual offense or has a known history of sexual offenses. *Id.* ¶ 25. The plaintiff alleges that he is not currently confined for a conviction for a sexual offense and has no history of sexual offense convictions. *Id.*

The plaintiff wrote to Director of Classification Lewis and Classification Officer Miaga in an attempt to resolve the issue regarding his sex offender treatment needs score and classification as a sex offender. *Id.* at 10 ¶ 42. Neither defendant responded to the plaintiff's letter. *Id.*

**III.    Discussion**

The plaintiff contends that the defendants violated his Eighth and Fourteenth Amendment rights by assigning him a sex offender treatment needs score of 3 and falsely labeling him as a sex offender, tarnishing his reputation, denying him due process, and imposing an atypical and significant hardship on him. He seeks declaratory relief and compensatory and punitive damages.

### A. Eleventh Amendment

The plaintiff sues the defendants in their individual and official capacities. Claims against state employees in their official capacities for monetary damages are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Accordingly, to the extent that the plaintiff seeks punitive and compensatory damages from the defendants in their official capacities, the claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

In his preliminary statement, the plaintiff asks the court to declare that the acts or omissions of the defendants were unconstitutional. Compl. ¶ 3. In the relief section of the complaint, the plaintiff states that the defendants have clearly violated his state and federal constitutional rights. Compl. at 10.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Institute of Certified Public Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Thus, it operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc.*, 838 F.2d 35, 37 (2d Cir. 1988).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56. The exception to Eleventh Amendment immunity,

however, "does not permit judgments against state officers declaring that they violated federal law in the *past*." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (emphasis added); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief.").

The plaintiff seeks a declaration that the defendants violated his constitutional rights in the past. The request for declaratory relief is barred by the Eleventh Amendment. Furthermore, if the plaintiff were to prevail on his Eighth and Fourteenth Amendment claims, the court necessarily would determine that the defendants had violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary. The request for declaratory relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**B.     Parole Board Members**

Quasi-judicial immunity is given to a person whose role is "'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978). It is well established that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir. 1999).

The plaintiff alleges that on February 15, 2019, Parole Board Members Roman, Sierra, Richards, and Turner presided over his parole hearing and relied on information from a police report regarding allegations of sexual assault to deny him parole. As parole board members presiding over the plaintiff's parole hearing, Roman, Sierra, Richards, and Turner are entitled to absolute immunity from claims seeking monetary damages. *See Milner v. Bd. of Pardons & Paroles*, No. 3:18-CV-01119 (JAM), 2018 WL 3733971, at *2 (D. Conn. Aug. 6, 2018)

(dismissing claims against anonymous members of parole board who conducted plaintiff's rescission hearing on ground that they had absolute immunity for performing quasi-judicial role of presiding over parole hearings). The claims against Parole Board Members Roman, Sierra, Richards, and Turner are dismissed.[4] *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff describes Parole Board Member Carleton Giles as "responsible for the direction of the Board of Pardons and Parole[s] and its directives, policies and regulations that guide the board members." Compl. ¶ 20. An exhibit attached to the complaint reflects that Carleton Giles is the Chairperson of the Board of Pardons and Paroles. *See* Compl. at 11. It is apparent that the plaintiff named Giles as a defendant due to his role as a supervisor.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must "show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). To allege personal involvement, a plaintiff is required to plead that:

> 1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal,

---

[4] The Board of Pardons and Paroles website reflects that after holding a jurisprudence hearing on February 15, 2019 regarding Bohn's eligibility for parole, the Board issued a decision on February 19, 2019 indicating that an evaluation of Bohn was needed. *See* http://portal.ct.gov/BOPP. Information regarding the hearing may be found on the website by choosing BOPP Hearings and Events Calendar, scrolling down to the entry for February 15, 2019 – Connecticut Board of Pardons and Paroles – 2019 Osborn CI Parole Hearing (Dockets/Minutes), clicking on that entry and then clicking on Minutes – Osborn.ParoleMinutes.2.15.19.pdf.

> failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[5] Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

There are no allegations that Chairperson Giles was aware of or involved in the plaintiff's hearing or any decision reached after the hearing. The plaintiff does allege that Giles "is responsible for the direction of the Board of Pardons and Parole and it is his directives, policies and regulations that guide the board members," Compl. ¶ 20, but the plaintiff fails to identify any policy created by Giles that caused the alleged wrongdoing by the parole board members or any other constitutional violation. The plaintiff has failed to allege sufficient facts to show that Chairperson Giles was personally involved in any violation of his constitutionally or federally protected rights. The claims against Chairperson Giles are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

---

[5] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon*, 720 F.3d at 139 (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon* ); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citation omitted). For purposes of this decision, I assume that the categories outlined in *Colon* remain valid.

### C. Deputy Warden Negron

The plaintiff does not refer to or mention Deputy Warden Negron other than in the caption of the complaint. As such the plaintiff has not alleged that Deputy Warden Negron has violated his federally or constitutionally protected rights. The claims against Deputy Warden Negron are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. Eighth Amendment Conditions Claim

The plaintiff invokes the Eighth Amendment and arguably alleges that Commissioner Cook, Captain Perez, Counselor Supervisor Long, Classification Director Lewis and Classification Officer Miaga have subjected him to cruel and unusual punishment by labeling him as a sex offender. In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions that inflict "unnecessary and wanton pain" or that result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme

9

Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that Defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

The plaintiff alleges that being labeled or stigmatized as a sex offender has caused other inmates to verbally harass and ostracize him and that he is in danger of physical harassment. *See* Compl. at 6 ¶ 32; at 8 ¶ 39. In addition, he is ineligible for educational and work release programs and placement at a minimum-security facility or in a residential program, including a halfway house. *Id.* at 7-8 ¶¶ 35, 39-40. The plaintiff claims that he needs to participate in educational, rehabilitative, and work release programs to transition back into the community. These allegations do not describe deprivations of the plaintiff's basic human needs. Furthermore, the possibility that the plaintiff may not be released on parole or to a halfway house or a facility within the community, or may be required to participate in a sex offender program, does not constitute a deprivation of a life necessity or basic human need. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (no constitutional right to be

released on parole or to other conditional release from prison, prior to expiration of valid sentence); *Wright v. Malloy*, No. 3:16-cv-1179 (SRU), 2016 WL 7115933, at *6 (D. Conn. Dec. 6, 2016) (ineligibility for parole or RREC "does not constitute cruel and unusual punishment in violation of Eighth Amendment"); *Blake v. Fischer*, No. 09-CV-266 (DNH/DRH), 2010 WL 2522198, at *9 (N.D.N.Y. Mar. 5, 2010) (inmate's "placement in sex offender training programs" did not amount to an infliction of cruel and unusual punishment"), *report and recommendation adopted*, No. 9:09-CV-266, 2010 WL 2521978 (N.D.N.Y. June 15, 2010).

Absent allegations that any defendant exposed the plaintiff to a deprivation of food, clothing, shelter, medical care, reasonable safety, or sanitary conditions, the objective prong of the Eighth Amendment standard has not been met. Thus, the Eighth Amendment claims against Commissioner Cook, Captain Perez, Counselor Supervisor Long, Classification Director Lewis, and Classification Officer Miaga are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### E. Fourteenth Amendment Due Process Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Id.* To state a procedural due process claim, a plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quotations omitted).

The plaintiff suggests that Commissioner Cook promulgated policies and directives,

11

including the Classification Manual, permitting Captain Perez, Counselor Supervisor Long, Classification Director Lewis, and Classification Officer Miaga to use information in a police report regarding a crime for which he was not convicted to assign him a sex offender treatment needs score of 3. *See Colon*, 58 F.3d at 873 (personal involvement may be shown by alleging that "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"). The plaintiff alleges that Cook, Perez, Long, Lewis, and Miaga violated his due process rights by assigning him an inaccurate sex offender treatment needs score and falsely labeling or stigmatizing him as a sex offender.

The United States Supreme Court and the Second Circuit have recognized a protected liberty interest in being free from a false stigmatizing statement that alters a person's legal status or rights in a tangible manner. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980) (protectable liberty interest implicated by characterizing inmate as mentally ill and transferring him to mental hospital for mandatory behavior modification as a treatment for mental illness without due process); *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) (concluding that "it continues to be the case that wrongfully classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest").

In *Vega*, the Second Circuit observed that "an action can be grounded in 42 U.S.C. § 1983 when [a] plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest." 596 F.3d at 81 (internal quotation marks and citations omitted). To prevail on a "stigma plus" claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-imposed burden or

state-imposed alteration of the plaintiff's rights or status [the plus]." *Id.* (internal quotation marks and citation omitted). The plus element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations omitted). Thus, allegations that might be "sufficient to demonstrate a government-imposed stigma, absent more," do not rise to the level of a "deprivation of a liberty or property interest protected by due process." *Vega*, 596 F.3d at 81–82 (citations omitted).

The plaintiff alleges that the defendants relied on information from a police report regarding his arrest on a sexual assault charge of which he was never convicted to assign him a sex offender treatment needs score of 3 and falsely designate him as a sex offender. He contends that the stigmatizing designation and elevated sex offender treatment needs score resulted in verbal and physical harassment, denial of parole, and ineligibility for community placement, and will result in his required participation in a sex offender treatment program. The court concludes that the plaintiff has alleged sufficient facts to meet both the stigma and the plus components of a procedural due process claim by defamation. *See Fonck v. Semple*, No. 3:18-CV-1283 (KAD), 2018 WL 4654700, at *3–4 (D. Conn. Sept. 27, 2018) (concluding allegations that "as a result of the classification, [inmate] has been threatened, extorted and assaulted . . . his classification has resulted in forfeiture of RREC as well as the denial of educational programs, parole, and community placement . . . . [and that] there [were] no records of a classification hearing ever being conducted" were sufficient to meet stigma and plus component of due process claim); *Anthony A. v. Commissioner of Corr.*, 326 Conn. 668, 683-86, 166 A.3d 624, 623-24 (2017) (holding inmate's allegations that he had been wrongly "classified as sex offender, and that he was required to participate in sex offender treatment, or risk forfeiting parole eligibility,

13

community release and good time credits" established a protected liberty interest under the stigma plus procedural due process test).

Because the plaintiff has alleged sufficient facts to demonstrate that he possessed a protected liberty interest in connection with the decision to assign him a sex offender treatment needs score of 3 and to designate him as a sex offender, the next step is to determine whether any defendant denied him procedural due process protections, to which he was entitled, before depriving him of the protected interest. *See Balentine v. Tremblay*, 554 F. App'x 58, 61 (2d Cir. 2014) ("[T]he adequacy of the process by which Balentine was placed on the online registry is an inquiry in the doctrinal analysis distinct from the existence of a 'stigma-plus' liberty or property right.") (citing *Velez,* 401 F.3d at 90–91) (analyzing whether plaintiff received "all the process to which she was entitled" only after concluding that she had alleged a valid "stigma-plus" liberty interest)).

The plaintiff alleges that he notified Captain Perez, Counselor Supervisor Long, Classification Director Lewis and Classification Officer Miaga in writing that his sex offender treatment needs score was wrong and sought to have a classification hearing to resolve the issue, but they either ignored his requests or refused to provide him with a hearing. The court concludes that the plaintiff has plausibly alleged that no classification hearing was held to determine his sex offender treatment needs score. The claim that Cook, Perez, Long, Lewis and Miaga deprived him of due process in connection with the decision to assign him a sex offender treatment needs score of 3 and to designate him as a sex offender will proceed.

### E.  State Law Claim

The plaintiff asserts that the defendants subjected him to "punishment without clear

warrant of law." Compl. at 9 ¶ 39 & at 10. The court construes this allegation as a claim that the defendants violated the plaintiff's rights under Article First, § 9 of the Connecticut Constitution which provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."

In *Binette v. Sabo,* 244 Conn. 23, 710 A.2d 688 (1998), the Connecticut Supreme Court authorized a damages action for violations of Article First, §§ 7 and 9 of the Connecticut Constitution, dealing with illegal searches and seizures. *See Binette,* 244 Conn. at 47. However, the court "emphasize[d] that our decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution.... Whether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis." *Id.* at 47–48.

Research has revealed no cases in which a Connecticut state court has recognized a private right of action for money damages under Article First, § 9 of the Connecticut Constitution for a claim that Department of Correction employees improperly classified an inmate as a sex offender, denied him privileges, or subjected him to cruel and unusual punishment. *See Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *1, 6-7 & n.6 (Conn. Super. Ct. Sept. 6, 2001) (narrowly construing *Binette* in a civil action asserting claims of violations by DOC employees of an inmate's rights and declining to recognize a damages action under Article First, § 9 of the Connecticut Constitution "under the circumstances of th[e] case"). The court declines to exercise supplemental jurisdiction over the claim seeking monetary damages for a violation of Article First, § 9 of the Connecticut Constitution against the defendants because the decision to recognize a new state constitutional tort should be made by

15

the Connecticut courts. *See* 28 U.S.C. § 1367(c)(1); *M.A. v. City of Torrington,* No. 3:10CV1890 (JBA), 2012 WL 3985166, at *4 (D. Conn. Sept. 10, 2012) ("[T]he Court declines to exercise supplemental jurisdiction over Plaintiffs' constitutional claims, leaving any such recognition of new state constitutional torts to Connecticut courts, based on the case-by-case approach of *Binette* and on considerations of federal-state comity."); *Lopez v. Smiley,* 375 F. Supp. 2d 19, 26 (D. Conn. 2005) ("In light of the Connecticut Supreme Court's explicit statement in *Binette* that the Supreme Court did not intend to create a cause of action for money damages for every alleged violation of the Connecticut state constitution, ... and the fact that federalism and comity concerns strongly suggest that recognition of new state constitutional torts should be determined on a case-by-case basis by *Connecticut courts* in the first instance, this Court will refrain from exercising supplemental jurisdiction over . . . Mr. Lopez's Connecticut constitutional claims" asserted under Article First, §§ 4, 5, 7, 8, 9, 10, and 14 of the Connecticut Constitution against Department of Correction employees.) (emphasis in the original).

## ORDERS

The court enters the following orders:

**(1)** The claims for monetary damages against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) and the claim for declaratory relief, all claims against Parole Board Chairperson Giles, Parole Board Members Roman, Sierra, Turner, and Richards, and Deputy Warden Negron, and the Eighth Amendment claim against the remaining defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The court declines to exercise supplemental jurisdiction over the claim that the defendants violated Article First, § 9 of the Connecticut Constitution. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to

exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law....").

The Fourteenth Amendment due process claim will proceed against Commissioner Cook, Captain Perez, Counselor Supervisor Long, Classification Director Lewis and Classification Officer Miaga in their individual capacities.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Commissioner Rollin Cook, Captain Perez, Counselor Supervisor Long, Director of Classification Karl Lewis, and Classification Officer Miaga and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Perez, Long, Lewis, and Miaga shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)** The Clerk shall send a copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**(7)** The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**(8)** The Clerk shall enter the Standing Order Re: Initial Discovery concerning inmate cases initiated by self-represented inmates and shall send a copy to the plaintiff.

SO ORDERED at Hartford, Connecticut this 18th day of October, 2019.

/s/
Michael P. Shea
United States District Judge